UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ENGINEERING & MANUFACTURING SERVICES, LLC, | ) ) ) | CASE NO. 1:07CV689 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) | OPINION AND ORDER |
| CHESTER J. ASHTON, et al., | ) ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Defendants' Motion in Limine (ECF DKT #65), seeking to exclude any and all expert reports or evidence relating to lost opportunity or lost profits damages. For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

Plaintiff, Engineering & Manufacturing Services, LLC ("EMS"), is an Ohio corporation with its principal place of business located at 1120 East 152nd Street, Cleveland, Ohio. EMS manufactures sheet metal parts for the automotive after-market in a 42,000 square foot building located at that address. Defendant, Chester J. Ashton, is a Battalion Chief employed by the City of Cleveland in the Division of Fire. Defendant, John McKenna, is a Captain and Deputy Fire Marshall employed by the City of Cleveland in the Division of Fire. Defendant, Douglas G. Veselsky, is a Lieutenant and Chief Fire Inspector employed by the City of Cleveland in the Division of Fire.

On November 29, 2006, Battalion Chief Ashton attempted to conduct an inspection of the water-based fire protection system(sprinkler or standpipe) at EMS, but was refused entry by the owner, Alexander Erdey. On December 22, 2006, firefighters from Ladder Company 31 attempted to conduct an inspection of the EMS premises, but were refused entry by the owner. On February 13, 2007, Battalion Chief Ashton signed an affidavit requesting a warrant, to inspect the EMS property at 1120 East 152nd Street, from Judge Raymond L. Pianka of the Cleveland Municipal Housing Court. Judge Pianka signed the warrant on February 20, 2007 and the inspection was carried out on February 22, 2007. After the inspection, EMS was cited, on March 15, 2007, for five violations of the City of Cleveland's Municipal Code. The City did not pursue court enforcement of the citations; and EMS did not appeal these violations.

EMS filed the instant Complaint on March 9, 2007, alleging the search warrant affidavit was merely "bare bones;" and contained no information that would permit a finding of probable cause by the issuing magistrate. EMS brought its single-count Complaint pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging "[t]he actions of Defendants CHESTER J. ASHTON, JOHN McKENNA and DOUGLAS G. VESELSKY, and each of them, were deliberate and intentional violations of 42 U.S.C. § 1983 and the clearly established constitutional rights of Plaintiff ENGINEERING & MANUFACTURING SERVICES, LLC to be free from unreasonable searches and seizures as guaranteed by the fourth and fourteenth amendments to the United States Constitution." EMS also requested monetary relief, in the form of nominal damages, general damages, compensatory damages, and punitive damages, from each of the individually named Defendants.

EMS submits an expert report from Harvey S. Rosen, Ph.D., opining that EMS lost over 2.9 million dollars when money spent on attorney's fees in this matter were not invested in the business. EMS contends that its lost profits damages claim is based upon its inability, due to Defendants' alleged tortious acts, to add additional production lines to its already successful, profitable manufacturing enterprise. Dr. Rosen calculates Plaintiff's loss from 2007 through 2011 to be $1,029,942; and future loss through 2022 at $1,917,132. Dr. Rosen arrived at these figures after reviewing Plaintiff's federal income tax returns (particularly Schedule C); Mr. Erdey's summary of sales and costs for his company; payroll records for legal research assistants; onsite visits to EMS; and interviews of Mr. Erdey.

In their Motion in Limine, Defendants argue that the damages outlined by the Rosen report are speculative and inadmissible, since they are based upon conjecture or contingencies which may never occur. Defendants contend that the expert report fails to identify the new lines of business, their profit margins, their potential markets, or that such markets exist. Lastly, Defendants insist that their actions did not proximately cause EMS to suffer lost profits damages.

EMS responds that an illegal search "most closely parallels the tortious conduct of trespass;" and that lost profits may be recovered in a Section 1983 Fourth Amendment case, applying Ohio trespass damages principles. *Pembaur v. City of Cincinnati*, 745 F.Supp. 446, 455-56 (S.D.Ohio 1990). EMS also argues that the damages are not speculative and are not based upon uncertain new business. Rather, as the result of Defendants' tortious acts, EMS has been unable to add complementary lines to its established, successful business. As for the proximate cause argument, EMS asserts that "the evidence is now overwhelming that

Defendants' strategy from the outset has been to force EMS either to abandon its manufacturing plant to the City, or to spend itself to destruction in resisting the City's efforts to take EMS's property." (EMS's Opposition Brief, ECF DKT #71, p.8). EMS also proffers:

> The evidence will show that, consistent with the City's established *modus operandi*, the unconstitutional search of the EMS plant on February 22, 2007 was simply the first in a series of unconstitutional searches and inspections that Defendants planned for the EMS property, and that the overarching goal of these inspections was to interfere with EMS's business operations to the extent that EMS would spend itself to destruction resisting the City's interference.

*Id.* at p.14.

In their Reply, Defendants counter that the *Pembaur* court's analogy between trespass damages and Section 1983 illegal search damages does not authorize an award of lost profits due to attorney's fees expended in prosecuting a subsequent civil action.

## II. LAW AND ANALYSIS

**Motions in Limine**

"Motions in Limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Insurance Co. v. General Electric Co.*, 326 F.Supp. 2d 844, 846 (N.D.Ohio 2004) (citing *Jonasson v. Lutheran Child and Family Serv.*, 115 F.3d 436, 440 (7th Cir.1997)). A "motion *in limine*, if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue . . . the trial court is certainly at liberty '* * * to consider the admissibility of the disputed evidence in its actual context.'" *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986) (citing *State v. White*, 6 Ohio App.3d 1, 4 (1982)). "Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Luce v. United*

*States*, 469 U.S. 38, 41 (1984).

Fed.R.Evid. 401 defines relevant evidence as evidence tending to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Moreover, Fed. R. Evid. 402 provides that evidence that "is not relevant is not admissible."

Fed.R.Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

**Application of law to facts in the instant case**

In the *Pembaur* decision, upon which EMS greatly relies, the District Court for the Southern District of Ohio provides careful guidance on the issue of § 1983 damages:

> By adapting common law tort damages rules to the constitutional deprivation complained of, § 1983 damage awards become legally and analytically grounded and plaintiffs are afforded compensation for ***actual injuries*** suffered. ... Compensatory damages – "damages grounded in determinations of plaintiffs' ***actual losses***" – are the mechanism by which constitutional deprivations are redressed. (Emphasis added). *Pembaur*, 745 F.Supp. at 455 (quoting *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986)).

To reiterate, in its Complaint, EMS alleges that Battalion Chief Ashton's affidavit was insufficient and misleading; and, therefore, Judge Pianka's administrative search warrant was deficient and lacking probable cause. By executing the warrant, Defendants allegedly violated

42 U.S.C. § 1983 and the clearly established constitutional rights of EMS to be free from unreasonable searches and seizures as guaranteed by the United States Constitution. Thus, the search of Plaintiff's premises on February 22, 2007 allegedly violated the Fourth Amendment, and caused EMS to suffer the loss of use of its property and its right to the exclusive possession of its property, economic loss, and loss of reputation. (Complaint, ECF DKT #1, ¶¶ 31-38).

Other than one reference to "illegal and ulterior purposes," there is no allegation of a "series" of searches. There are no allegations, nor evidence adduced, of what EMS characterizes as "wave after wave of inspectors" sent to conduct "serial" inspections. EMS does not dispute that the citations issued after the February 2007 search were never enforced by the City in judicial proceedings. EMS was not required to defend the code violations; and EMS did not appeal them. EMS provides no proof that its facility was shut down by the City, nor that its manufacturing operations were disrupted other than what would have been necessary to conduct the search. EMS's expert report does not satisfactorily demonstrate *actual* injuries and losses for which EMS can be compensated under § 1983. Based upon the state of the record, the Court finds that the diversion of EMS assets to litigation fees was Plaintiff's choice, and not the result of any of Defendants' actions. Consequently, Dr. Rosen's opinion will not help the trier of fact to understand the evidence or to determine a fact in issue; is not based on sufficient facts or data in evidence; and is irrelevant.

### III. CONCLUSION

Therefore, Defendants' Motion in Limine (ECF DKT #65), seeking to exclude any and all expert reports or evidence relating to lost opportunity or lost profits damages, is granted.

The Court retains the discretion to revisit this issue immediately prior to trial, or during the presentation of Plaintiff's evidence at trial.

  **IT IS SO ORDERED.**

               **s/ Christopher A. Boyko**
               **CHRISTOPHER A. BOYKO**
               **United States District Judge**

**Dated: March 21, 2013**